Richard Delaferra and I represent the appellant Gregory Williams. Your Honor, I had filed a brief that raised three issues. I would like to state at the outset that as to the third issue, Your Honor, which is the Brady issue, I am in a position to waive that issue. The reason why is I don't believe that the record is sufficient for me to argue to this court that there was a Brady violation. It appears that an attorney that ratified the dismissal of the case against one of the government's witnesses was available and there's nothing in the record to indicate that that attorney was called to court to issue an opinion or to issue an opinion. So I would like to turn, Your Honor, to the second issue, which is the comments of the court, specific comments and then generally comments during the trial. Your Honor, I was remiss. I would like to reserve five minutes for what I have. Let me just mention, as to the waiver, we haven't discussed case law. It seems to me that waiving that issue is indeed prudent. In the record, I looked for it. I had my clerk look for it. Other than the Burr allegation that was this deal cut, we couldn't find anything else. That's right. And then there was also a cryptic reference in an appeal at the appellee's brief below that I think re-raised the issue before the district court that found that there was no evidence to rebut that denial. That's right. That's why, upon further reflection, Your Honor, I feel it's not properly preserved before this court. As to the instruction, you're not saying that there was anything inadequate about the instruction. You're just saying that the voices were already out of the barn and the instructions couldn't get them back. That's correct. That's as to the curative instruction that was given by Judge Swan with regard to the marijuana comments that were made. Firstly, and I think it's important to note because there was some issue as to whether this was preserved below, counsel for the defendants made a motion for mistrial based on the comments of the court with regard to marijuana. I submit that those comments were material in that what the defense counsel was trying to do was challenge the ability of the witness to perceive what was going on, given the fact that the witness admitted that he was smoking marijuana. The trial judge interjected on several occasions, basically diminishing any argument by counsel through his cross-examination that marijuana would have caused this individual to not correctly or accurately perceive specifically who was the shooter. The issue of identity was crucial in this case. If you take—there was only one witness, and I would agree that those remarks were uncalled for is the kindest way I guess I can put it, but they were totally inappropriate. But if you take that witness's testimony out of the case, you still have sufficient evidence on it. You've got one of the three witnesses, two ID'd your client, one of them take him aside because of the problems with the perception testimony, the judge's improper comments. You still have the testimony of one witness who said your client was the shooter. Why isn't that enough by itself? Well, first of all, that witness stated that they saw Gregory Williams with a gun. They didn't say that they actually witnessed the shooting. Didn't they say they saw him get out of the car and chase your client? That's correct. That's correct. And to the extent that that's circumstantial evidence that Mr. Williams was the shooter, this witness Sasso didn't directly see the shooting. I submit, as I stated in my brief, that this witness is inherently incredible because of the multiple statements that he made basically saying that Mr. Williams was not the shooter. But the problem is that it's a jury function to assess credibility, and you had before the jury the fact that he was an admitted liar, speaking of Sasso. You had before the jury the fact that Mr. Smith was under the influence of marijuana. The jury considered all that and made a decision. I mean, why should we not be deferential to the jury's verdict, given that they are the finders of facts, which includes credibility determinations? And, Your Honor, the case law is replete with statements that this court or any court would not assess credibility. However, in the Petillo case that I cited in my brief, there seems to be an exception where a court can determine that the witness's testimony is inherently incredible. And it's my position that because of the— Whose witness's testimony was inherently incredible? I'm going to—I would say that Mr. Sasso's testimony was inherently incredible. Well, but you don't want us to say it must be inherently incredible because the jury made a decision and the jury was advised that he had made three statements in which he said Williams wasn't the shooter. And then at trial he says Williams was the shooter. But the jury considered all of that. I'm just wondering—I mean, this is a jury verdict. Shouldn't we be deferential given that the jury assesses credibility? Well, Your Honor, I can only submit that this is a rare case where a court can overturn a jury's verdict if the court were to find that a witness's testimony was inherently incredible. And why do we say the jury got it wrong? That's right. It's quite a tough task. I understand, Judge, and there are not many cases where— in fact, in this circuit, the Petillo case, the court declined to overturn a verdict but did recognize that a court could if the court found the testimony inherently incredible. I mean, is that your best argument or is it your best argument that the judge's comments influenced the jury? Not that we should upset the jury verdict because we think the facts are different, but rather that there were comments made in the course of the trial that might have affected the jury's deliberation. Well, if Your Honor wants me to pick a favorite, a best argument, it certainly, I think, is the judge's comments. The marijuana comment that I've just discussed with Judge McKee, the comments throughout the trial—and I highlighted one in my brief where the judge explained that he's the most senior judge and that his experience is greater than the other three judges combined, sort of elevating his stature as a supreme authority in the court. And then, Your Honor, the comment with regard to Ms. Peterson being declared a hostile witness. It would seem to me that if the government—and this was out of the presence of the jury— if they make a motion to have a witness declared hostile for whatever reason, and I'm not saying that it was improper for Judge Swann to declare that witness hostile, but to state to the jury when the jury comes back into the room that, A, I'm declaring the witness hostile, I don't believe that that's necessary. What is your objective? I mean, the judge asked, I'm going to declare the witness hostile witness. Any problem? I think nobody had any. No, and that's true. That's true. To declare the witness hostile, I don't think there's any error in that determination. It's in explaining to the jury that, A, I'm going to declare the witness hostile. I don't believe that that is necessary. It's enough for the government and for the defense to know that the government is permitted to ask leading questions. To explain all that to the jury, I think, is superfluous, but where it gets to the stage of erroneous is where the judge says, because the witness is being uncooperative and evasive, and then goes further to say, to point out she's twice rejected to answer questions of the government. Well, could you explain that a little bit better? I understand the comments about being evasive and uncooperative, but I couldn't understand what it meant to reject the government two times. I think what the judge— She did answer the government's question. The government's question had to do with do you know the shooter or do you see the shooter or do you see Williams in court? It was a direct question, and she said no, Williams was not the shooter. That's right. But rejecting the government twice, what does that mean? Judge, I think, and I have to find in the transcript, I think what Judge Swan was doing was he was using this— Ms. Peterson said, I reject that question. I think the inference was that she was refusing to answer it or she didn't want to answer it or she didn't understand— She wasn't being obstreperous. She rejected—say that again. Help me out. She said in her answers, I reject that question. I think the inference was that she didn't want to answer it or she didn't understand the question. So when I read Judge Swan saying that she rejected the question, the only thing that I could hearken to within the record that he was referring to was Ms. Peterson's answers previously. Was it because she didn't give the government the answer that the government wanted? It was Ms. Peterson. My recollection, I'll find it when the government is up speaking, specifically is she said, I reject that question. Were you trial counsel? No, I was not. So in light of the court's—looking at the cumulative effect of the court's comments throughout the course of the trial, I submit that the comments concerning, if we're going to consider Mr. Smith's testimony, that his perception is not affected by marijuana elevates his credibility while calling Ms. Peterson uncooperative and evasive diminishes her credibility and that Ms. Peterson is the witness who says that I saw the shooter and it was not Mr. Williams. I think that Judge Swan, in his comments to the jury, gave the impression to the jury that he believed Mr. Smith over Ms. Peterson. Then what do we do with this instruction, which is a very strong curative instruction that, forget whatever I may have said, it's you, the jury's determination that is important here and it's your value of the testimony that you must be guided by and you must consider it in light of your experience and understanding. Nothing I say can influence that. It's a very strong—in meeting his comments, I was really taken aback by it. But when I saw the curative instruction, it is a good, solid instruction. And absent that instruction, I think we might have a slam dunk here. But with that instruction, aren't we, especially given Ricky and some of our other cases, don't we have to kind of honor that the jury followed what the judge said? Judge, I see the red light, but if I could answer the court's question. The strength of the curative instruction is one of but four elements that the court needs to consider. And I think the materiality is clear in that it goes toward the ability to perceive, which is essential to making an identification, which this was clearly an identification case. And the prejudicial effect, which is one of the other elements, is not to be viewed in isolation. And when you consider the judge's comments throughout the trial, his comments as to Ms. Peterson and how he viewed her demeanor in court as uncooperative and evasive, I think that that diminishes any strength that the curative instruction had in that in isolation and that the totality shows that the comments denied Mr. Williams his right to a fair and impartial tribunal. Thank you very much. Good morning, Your Honors. I'm Carolyn Smock. I'm representing the government of the Virgin Islands for the people. At the outset, I would like to bring something to the court's attention. This case involved several counts, and one count in particular involved the possession of ammunition. And he was found guilty on that count also. And I would like to state that in the previous case before this court, the Daniel case, which was considered in March of 2008, this court ruled that the Virgin Islands statute for the unlicensed possession of ammunition could not render a conviction because it did not authorize or determine how a person who had ammunition could get a license and that the government could not prove such case, could not prove the elements of that charge. In addition, our Supreme Court in about three recent cases, which was a Smith case and a Stevens case and a Mully case, have also followed this court in its decisions and have ruled that the government, that particular count, the government has been unable to prove beyond a reasonable doubt that the defendant possessed, did not have authority to possess ammunition. Could you help me out? What does that have to do with Mr. de la Pera's argument that his client was denied a fair trial on the basis of the judge's comment? It has nothing to do with that particular argument, but I think he did not raise an argument as to the unauthorized possession of ammunition. But we don't make any decision regarding that. You can make a decision regarding that. And our Supreme Court, in all of the cases that we have recently had, the appellant did not raise that issue in his brief and did not raise it before the court. In the Daniel case also. But it was not raised. We make no decision concerning that issue. Well, see, I think that there are cases, in particular the United States v. Gatos, which is a Third Circuit case from 1997, says specifically that the failure to prove one of the essential elements of a crime is a type of fundamental error which may be noticed by an appellate court, notwithstanding the defendant's failure to raise it in the trial court. So I think... I'm sorry? I'm missing something. I don't understand why we're engaging in this argument, because it doesn't raise an appeal. And there's a conviction on that panel, a conviction in the remaining 10 minutes, and maybe Congress chose not to raise it. I don't know. I don't have an argument in respect to conviction for possession of ammunition. I don't either. I guess you're arguing that as a matter of law, that conviction has got to be vacated because... Right. That's what I'm arguing. I think that I'm bringing it to this Court's attention based on a previous decision that this Court has rendered in the United States v. Daniel. I really appreciate your candor. I was not aware of it at all. Could you give us a 28-J letter where you lay out those citations and give a copy to Mr. Farrar? Yes, I do have a copy. I don't think he's going to object to it. It would make a big difference to Mr. Williams. I certainly appreciate Ms. Fox's candor she told me this morning. I appreciate it. I have a former federal prosecutor. I'm always impressed when federal prosecutors take the view that their job is to achieve justice, not just to get a conviction. Ms. Fox is in that tradition. Justice is important. It certainly is. It should be anyhow. Thank you. Now I'll go back to the arguments raised. Getting back to the argument Mr. D'Alfredo has raised, let me put it to you this way. Clearly the judge's comment about the marijuana only goes to one witness. But, and the judge gave a very strong period of instruction, as Mr. D'Alfredo says, that's only one part of our consideration. But if the judge's comment in giving that information about marijuana and perception, if that was such as to suggest to the jury the judge thought that Williams was guilty, why wouldn't that permeate this entire trial? And so even though you do have another witness who made an identification and there's some problems with that witness's identification, the judge then has this discussion about this is a hostile witness. I mean that is consistent, that's what Mr. D'Alfredo is arguing, that is consistent with suggesting to the jury that the judge thinks Williams is guilty and therefore the jury is going to take that lead. Why shouldn't that be a concern here? Well, the argument that is made in terms of the judge's comments to Mr. Sasso were clearly not material to this case. Those were just aside comments. They did not go to the heart of this matter. Well, but the heart of the matter goes to identification and whether or not Williams was the shooter or seen with a gun chasing the decedent. And if you can impair someone's ability to perceive something, that's pretty relevant. And if the judge is saying that, look, the defense attempted to say that this witness really couldn't perceive what he's saying he saw because he had been smoking, as the judge said, weed, if the judge just negates all that and said, look, I've been driving around with these people who smoke marijuana. Some of them are better drivers than me. They don't have any problem. It doesn't impact their senses at all. Why wouldn't that totally do two things? One, it totally negates the defense impeachment of the identification witness and also suggests to the jury that the judge who's got all this experience that he's going on and on about, he does things differently and his experience is more than all the other judges combined. Well, this seasoned jurist who sees these cases all the time, he thinks Williams is guilty. How do you overcome that as a defense attorney? Well, the comments that the judge made, in my estimation, did not show that or were not intended to show that defendant Gregory Williams was guilty. Those were just facetious remarks made to try to get counsel to get back on the point. I think that there was enough other evidence in this instance. Raymond Smith identified the defendant as a shooter. Raymond Smith said that the defendant got out of the car. He saw him get out of the car.  The problem is that the defense attorney sought to aggressively cross-examine Mr. Smith because he admitted he had been smoking marijuana just moments before he saw the shooter. And the court cut him off, cut defense counsel off in his examination. And in fact, in his comments, suggested that weed is not so bad. He really did. So it was an argument for legalizing marijuana? I don't think the judge has to say, yeah, I think he did it. This guy, look at him. He doesn't have to make a comment that, in fact, implicates guilt. But if the judge makes a comment that suggests to the jury that the witness's perception of events, it's so bad. I mean, smoking weed, I see people driving, they're talking on the phone, not so bad. Drunk drivers, they're not so bad. It implicates to the jury that this witness indeed was able to perceive the events that occurred. Now, why isn't that unfair to a defense? Well, first of all, Mr. Smith was the person who was running. Mr. Sasso was the person who the judge made the comments about. Mr. Smith clearly stated. No, no, no, no. I don't think that's right. Sasso had nothing to do with marijuana. I think Sasso was untouched except because of his three prior inconsistent statements. We're talking about Smith, who went to the housing project, I guess you would say, for the purpose of smoking marijuana. Yes, but the jury also. And he did that and said on the stand, yeah, I was smoking marijuana. But the jury also had his testimony. He testified, I saw the defendant get out of the car. I saw the shape of the defendant's head. That's fine, but that's the whole point. Defense counsel wanted to show that his perception was impaired. And that's when the judge cut him off and said, in the presence of the jury, weed is not such a bad thing. No words to that. But the judge also was very clear. After the defense objected to the statements, the judge made it very clear to the jury. You are the trier of the fact. You must ignore everything that I have stated. He says, in fact, I am striking it from the record. I think he gave ‑‑ I like that statement. Judge McKean read it a short while ago. But here's the problem I have with this case. Given what the judge said regarding Smith and his comments concerning marijuana and suggesting that his perception may not have been so impaired, given what the judge said regarding Peterson as a hostile witness who was being evasive and uncooperative, so you have one witness who is favorable to the defense disparaged, one witness who is favorable to the government bolstered, don't you have the ingredients of an unfair trial? No, I do not think so, because I think if you look at Ms. Peterson's testimony, if we recall, Ms. Peterson initially took the stand and said she was not going to testify. She was going to take the fifth. And I think the jury took all of this into consideration. And after an attorney was hired to represent Ms. Peterson, did she take the stand? And then when she took the stand, she started making comments such as, I reject that, which was implicated, I'm sure that's what the jury saw, implied that she did not want to testify as to those questions. Do you think it was appropriate for the judge to say in the presence of the jury this witness is evasive and uncooperative? If he was declaring her a hostile witness, I think that he had to explain to the jury why she was a hostile witness. And I think that was his sole purpose in doing that. I do not think that was his purpose to elevate her. I think that's very easy. I can't tell you how many trials I've presented when I was in state court. You just tell the jury that there are technical rules of evidence that govern the conduct of the trial, the legal matters. The jury doesn't have to be concerned with them. Under those rules of evidence, I'm declaring this witness to be a hostile witness. It has nothing whatsoever to do with the witness's credibility. You shouldn't determine or read anything into that about the witness's credibility. The only reason I'm doing that is as a matter, a technical matter, it allows the government to ask certain kinds of questions. We call them leading questions that the government couldn't otherwise ask. And those are questions you may see other lawyers asking those questions. Those are questions that suggest the answer. Normally, a lawyer cannot ask a question that suggests the answer. If the witness, however, is a hostile witness, we allow the party calling that witness to ask a question that will suggest the answer. For reasons that really you ought not to be concerned with, this witness is a hostile witness. I'm going to allow counsel to ask questions that will suggest the answer. That's all I have to say. In that way, the jury knows, well, there's a reason that this lawyer is asking questions that are different from the other witnesses because the problem is if you don't do that, you run the risk that the jury will see questions being asked of one witness that will suggest the answer. There will be an objection. The objection will be sustained. The judge will say, don't lead the witness. And then you have another witness come up, and the government asks questions which lead the witness, and there's either no objection or there are objections that are overruled. You have to make sure the jury doesn't infer from that that the judge is biased, but the judge is allowing the government to get away with certain kinds of questioning and not allowing the defense attorney to do it, so you tell the jury. The technical things, as I just said, don't worry about it. I'm going to allow leading questions to be asked of this witness, and you explain it. You don't have to get into this witness as basically an unreliable witness because that's the jury's prerogative, and it seems to me that, again, it's a great creative instruction, but why isn't it like tainted lenses? If you put on the best lenses in the world but they're tainted yellow, no matter what you shine into the eyes of the person wearing the lens, you're going to see a yellow light because that's the filter they're viewing the scene through. If the jury views the judge's instructions through the lens of, well, this very seasoned jurist thinks that Williams is guilty, why doesn't that color everything the judge says in terms of the creative instruction and everything else? It's like my telling you and everyone in this courtroom, whatever you do now, do not picture in your mind a pink elephant. I will bet everybody in this room just saw a pink elephant in their minds. I'll bet you anything. Why isn't it the same scenario when the judge will tell them one thing but the stage is so set that his words become meaningless? Well, see, I don't think that the judge's statements were overbearing to the jury. There were so many other factors going on in this case, so much other evidence that the jury had to consider, and I think that the jury looked at the credibility of all of the witnesses, and based on what the judge told him, you are the trier of fact. You are the determinative of the facts. You decide whether the witnesses are credible. You decide the evidence, and I think that the jury clearly did that, and I do not believe that the judge's comments were so overbearing as to prejudice the jury as to any other issues that were raised. And in particular with Ms. Peterson, she also testified that she was frightened, the reason why she did not want to testify. She was afraid for herself and for her children. The jury had all of that under consideration. I'm going to interrupt you there. I have one question. In most cases we see and have issues similar to this are when perhaps counsel has been vouching for a witness or there's been some inadvertent comment made or some nonresponsive answer from a witness that the judge attempts to ameliorate by a curative instruction. In fact, I don't ever recall reviewing a case in which the judge himself has vouched for a witness and then attempted to erase it by a curative instruction. Do you have such a case that you can point me to in which that has been done and the court has found it to have cured the infection of that trial? Well, the cases that come to mind where judges clearly have made comments that this court has found not to be of such a nature as to influence the jury or considering all the other evidence. I think one case is the Olgin case, I believe, which dealt with an internal revenue situation where a judge used the word spurious, which the appellate court said that they would not use that word if they were acting. But the judge did use that word, but at the same time they said that it was not of such a nature as to be so overbearing that the jury could not have considered the total evidence and the credibility of all the witnesses. Was the judge in that case vouching for the credibility of the witness or bolstering the judge? I don't think so. There's an Anton case, but that judge, he said that the witness was totally disbelievable, totally lacked credibility. And I think in that instance, and he also did not issue, make any curative instructions that were sufficient to change the issue since that was the only witness also in that particular case, in the Anton case, that was the only witness. And the judge said that that witness, that the person, there was only one witness and said it was not credible. But in this instance, I think that we have more than one witness, and they all can corroborate the fact that a car, a particular car drove up, a person got out of the passenger side with a gun. That person started chasing two individuals. They heard a gunshot. Someone was found dead. All of that, although they did not directly see it, but it's clearly circumstantial and it clearly goes to the weight of the evidence. And I think that the jury, I do not think that, I believe that the jury weighed all of that, and I do not believe that they were influenced by a couple of statements that Judge Swan made. Ms. Mock? Yes, sir. Were you trial counsel by any chance? No, sir. Is it fair to say that the outcome of this case depended entirely on the testimony of Sasso, Peterson, and Smith? I think that that was the testimony of those witnesses was the outcome of the case, yes, and that the jury looked at that and weighed the evidence and the credibility. Now, Williams was sentenced to a term of life in prison. I believe his sentence, he was, he was, yes. Does the magnitude, and I may be, I'm probably mistaken about this, but does the magnitude of the consequence that is a person who was on this type of testimony could a sentence to a term of life in prison affect or play any role in our review of the judge's comments? I do not think that it does. Probably should not. Yes, I do not believe so. I couldn't help thinking about it. Thank you, Ms. Mock. Thank you very much. Stray comments, Mr. Dallaferro. Just stray comments that the jury could weed out and ignore and follow the judge's final instructions. Judge, I think it's the overall nature of the judge's comments throughout the trial. I mean, he didn't seem to have an agenda in the case. He was just making glib off the top of his head comments. He didn't have a filter on his mouth. And I don't, I'm not going to say the judge had an agenda. I don't think there's evidence that the judge did have an agenda, but what we're concerned or what I'm concerned about is the appearance of partiality toward the government and the bolstering of Mr. Smith's perception and the diminishing of Ms. Peterson's credibility. And Judge Fuentes, I just wanted to point out to you, in Volume 3 of the trial, in Ms. Peterson's testimony, page 195, starting at line 17, a question by the government. Could you tell us where Bolo is located? Describe what Bolo looks like. Bolo is the driver, Kendall Williams. And they're asking for an in-court identification. And Ms. Peterson says, I reject to that one. And the court says to you, what do you mean, reject to that one? I don't understand what you're saying. And you say that you reject. Do you understand? On to page 196, the question. The witness, yes, I did understand the question. The court, all right, okay, by the attorney for the government. Why do you reject that question, Ms. Peterson answered, because it's not my duty to point no fingers. She then went on to point out Mr. Kendall Williams in the courtroom as the driver of the green Honda. But when I read Judge Swan's statement to the jury that Ms. Peterson had twice rejected questions, it sounded odd to me, and I was looking back in the record for something that would have triggered that comment. And that appears to be what happened. It helps, thank you. I just wanted to, unless the court has some other questions, one of the things that Ms. Smock indicates to the court in assessing Ms. Peterson, I think she takes fault with Ms. Peterson that she took the Fifth Amendment before the jury. I don't believe that a jury is supposed to infer anything from an invocation of a right to remain silent. Now, it appears that after consulting with the court-appointed lawyer, she became aware that, well, she testified. So what went on in those conversations, we don't know. It's not part of the record. It's protected by the attorney-client privilege anyway. But I don't think that, as Ms. Smock says, well, let's assess Ms. Peterson. The jury assesses Ms. Peterson's credibility. One of the things that she did was take the Fifth. I don't think that that's a fair thing for the jury to consider or the court to consider. With regard to the Olgin case, if the judge uses one word, spurious, that's a lot different than the case. Yeah, the comments have to go to the center of the defense. I mean, they have to go to the core of the defense. How did those comments go to the core of the defense? Well, because obviously the ability of Mr. Smith to perceive who the shooter was was crucial to the case. And that's what the attorney was trying to get to, and I believe he was unfairly cut off. I think that the comment that started the whole downfall, if you will, was, are you able to drive when you're on marijuana? Now, Judge Swan wants to say, well, driving has nothing to do with this case. But driving is – in order to drive a car properly, you have to perceive properly. If you – and the attorney was trying to suggest this. You're going to tell this jury, Mr. Smith, that you can drive while you're impaired by marijuana. And he was cut off, and that's when the comment came up. But the comment to the effect that people who smoke marijuana can be better drivers than people who are sober. That appeared to be Judge Swan's comment. It did. And by clear inference that this witness is perfectly able to perceive regardless of his admission to smoking marijuana. Because I, as the judge, have seen drivers on the street. I smell it. I know what it is. And they're better drivers than the other drivers on the road. So I think – Well, of course, he admitted that he smoked marijuana, so it was before the jury. Right. I think the judge's concern is you didn't have a witness, an expert who would testify of the effects of marijuana on the ability to perceive. Well, and – I mean, I think that was the government's contention. You didn't have a witness. Right. Well, at that point, I mean, I don't know that an expert was listed. I don't know that an expert was prepared to testify. But it was, in my view, a little bit of jumping the gun. Well, you don't have an expert. Well, it's not my side of the case, Judge, if an expert is necessary. But also, jurors are entitled to use common sense. I know that in drunk driving cases, jurors – there's not necessarily an expert that's going to testify to the effects of alcohol on an individual and his ability to drive, his ability to perceive, his ability to judge distances, things of that nature. So that when we tell jurors you can rely on your common sense experience, marijuana is prevalent. It's spoken about on TV. There's even new policy by the Department of Justice as to the prosecution of marijuana cases. So I think that the public and jurors being members of the public are aware of what marijuana is all about. And then when a judge steps in and says, oh, that's not my experience, some jurors might say, well, I need to follow the judge. And that's my concern. I see my time has finished. I thank you. Thank you. And we'll take the matter under advisement. I think also for a very helpful argument. And again, Mr. Mock, I want to commend you for your candor. It's very refreshing. It shouldn't be surprising, but it is surprising that we don't often see that kind of candor from representatives of the United States Justice Department. I wish we'd see it more often. But thank you very much for bringing it to our attention. At least I was not aware of it. I assume Judge Fuentes was not aware of it. I'm not sure if Judge Snodgart was aware of it or not on the ammunition charge. Thank you.